**Christopher D. Hampson**
University of Florida
Levin College of Law
309 Village Drive
Gainesville, FL 32611

**Elise Bernlohr Maizel**
Michigan State University
College of Law
648 N. Shaw Lane
East Lansing, MI 48824

**Mason A. Kortz**
Harvard Cyberlaw Clinic
Lewis Hall, 4th Floor
1557 Massachusetts Avenue
Cambridge, MA 01238

August 4, 2025

Office of Legal Counsel, FOIA Division
Equal Employment Opportunity Commission
131 M Street, NE, 5NW02E
Washington, D.C. 20507

**VIA ELECTRONIC FILING**

**RE: Freedom of Information Act Appeal – Case Number 820-2025-011745**

Dear FOIA Officer,

This is an administrative appeal under the Freedom of Information Act, 5 U.S.C. § 552(a)(6)(A)(i)(III)(aa), in response to the U.S. Equal Employment Opportunity Commission's ("EEOC") denial of FOIA Request 820-2025-011745 (the "Request"). The Request was filed on May 13, 2025, by Professor Christopher D. Hampson, Professor Elise Bernlohr Maizel, and Mason Kortz (collectively, "Requesters").

**Procedural History**

On May 13, 2025, Requestors submitted the Request via the EEOC's online portal.[1] The Request sought records related to the March 17, 2025, letters sent by the Acting Chair of the EEOC to various private law firms.[2] The three enumerated items included (1) correspondence between the EEOC and the firms receiving the letters; (2) settlement agreements between the EEOC and those firms; and (3) records referring to such settlement agreements.

On June 13, 2025, the EEOC issued an initial response denying, in full, items (2) and (3) of the Request.[3] The EEOC cited its FOIA regulations for the proposition that it cannot provide information about charges filed or attempts to eliminate unlawful employment practices. It further cited Title VII of the Civil Rights Act, the ADA, and GINA, as applied through Exemption (b)(3) to the FOIA, to withhold information about complaints, charges, or settlements under those laws. Finally, it cited Exemption (b)(7)(C) for withholding the settlement agreements themselves.

---

[1] Attachment A (May 13, 2025, Request).
[2] As of this filing, the letters are available on the EEOC website at https://www.eeoc.gov/sites/default/files/2025-03/Law_Firm_Letters_-_03.17.2025.pdf.
[3] Attachment B (June 13, 2025, Initial Response).

On July 21, 2025, the EEOC issued a final response denying, in full, item (1) of the Request.[4] The EEOC again cited its own regulations as well as Title VII of the Civil Rights Act, the ADA, and GINA as its basis for withholding correspondence with the firms receiving the March 17 letter.

**Basis for Appeal**

Requestors appeal the EEOC's decision to withhold the request records in full. None of the statutes cited by the EEOC prohibit the disclosure of records created or obtained *prior* to the filing of charges and a formal investigation. Accordingly, none of these laws operate as exempting statutes under FOIA Exemption (b)(3). As for Exemption (b)(7)(C), the EEOC argues that disclosure would jeopardize the privacy of employees who were witnesses or subjects of its investigation. To the extent this exemption applies at all, the appropriate response would be to redact personal identifiers—not to withhold the records in full.

**A.  Exemption (b)(3) does not apply because none of the cited statutes prohibit disclosure of information prior to charges, investigation, and a finding of reasonable cause.**

The EEOC asserts that Title VII of the Civil Rights Act,[5] as applied through Exemption (b)(3)(A)(i) of the FOIA, prohibits the disclosure of records responsive to items (1) and (2) of the Request.[6] However, the plain text of the law, combined with publicly available information about the timeline of the EEOC letters, shows that Title VII does not apply to the records at issue.[7]

The EEOC cites § 706(b) of the Civil Rights Act for the proposition that "[c]harges shall not be made public by the Commission" and "[n]othing said or done during and as a part of [the Commission's informal endeavors at resolving charges of discrimination] may be made public."[8] However, this quotation leaves out important language about the order of operations under § 706(b). First, a charge must be filed. Then, after serving notice of that charge, the Commission "shall make an investigation thereof."[9] Finally, "[i]f the Commission determines *after such investigation* that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods . . . ."[10] Only then do these "informal endeavors" become confidential.

This is not just the Requesters' interpretation of the law – it is also the EEOC's. The very regulation cited in the denials, read in full, establishes this:

---

[4] Attachment C (July 21, 2025, Final Response).

[5] Requesters agree with the EEOC's position that § 107 of the ADA and § 207 of GINA "adopt the procedures of sections 706 and 709 of Title VII." Attachment B at 3. According, because Title VII does not prohibit the release of the records at issue, neither does the ADA or GINA.

[6] *See* Attachment B at 2-3; Attachment C at 1.

[7] *See Cal-Almond, Inc. v. U.S. Dep't of Agric.*, 960 F.2d 105, 108 (9th Cir. 1992) (explaining that records cannot be withheld under an exempting statute "[if] the information withheld would not fall within the terms of [that statute]").

[8] Attachment B at 3 (quoting 42 U.S.C. § 2000e-5(b)).

[9] 42 U.S.C. § 2000e-5(b).

[10] *Id.* (emphasis added).

> Section 706(b) of title VII provides that the Commission shall not make public charges which have been filed. It also provides that *(subsequent to the filing of a charge, an investigation, and a finding that there is reasonable cause to believe that the charge is true)* nothing said or done during and as a part of the Commission's endeavors to eliminate any alleged unlawful employment practice by informal methods  . . . be made public by the Commission . . . .[11]

There is no plausible way to read § 706(b) or § 1610.17(e) to cover records created or obtained prior to a charge, investigation, and finding of reasonable cause.[12]

The EEOC also cites § 709(e) for the proposition that it cannot disclose information gathered from the target law firms.[13] Again, the confidentiality requirements of § 709(e) only apply to "information obtained by the Commission *pursuant to its authority under this section*."[14] Section 709, in turn, applies to "any investigation of a charge filed under [§2000e-5]."[15] If no charge has been filed, § 709 does not apply.[16]

Here, there is no evidence that the EEOC ever filed charges, let alone conducted an investigation and found reasonable cause, with regard to the law firms that received the March 17, 2025, letters. Certainly, as of March 17, 2025, no charges had been filed and no investigation had been opened; otherwise, the EEOC's contemporaneous press release[17] would have violated the same provisions the agency relies on to withhold records now. Nor do the letters themselves constitute charges, as they lack the required verification.[18]

If charges were later filed against the law firms, subsequent investigatory materials might be exempt from disclosure—although any records created or received by the EEOC *before* that point would not. However, this seems unlikely. At least four firms—Kirkland & Ellis LLP, Latham & Watkins LLP, Simpson Thacher & Bartlett LLP, and A&O Shearman Sterling, LLC—never went through the charge, investigation, and reasonable cause process. If they had, the EEOC would have

---

[11] 29 C.F.R. § 1610.17(e) (emphasis added).

[12] *See Smith v. Universal Servs., Inc.*, 454 F.2d 154, 157 n.1 (5th Cir. 1972) (citing *King v. Georgia Power Co.*, 295 F. Supp. 943 (N.D. Ga. 1968) ("It is clear from a casual reading of [§ 706(b)] that [it] refers only to efforts at conciliation of the EEOC and has no application to the agency's investigation or findings of probable cause.").

[13] *See* Attachment B at 3 (citing 42 U.S.C. § 2000e-8(e)).

[14] 42 U.S.C. § 2000e-8(e) (emphasis added).

[15] *Id.* § 2000e-8(a).

[16] *See E.E.O.C. v. Shell Oil Co.*, 466 U.S. 54, 64 (1984) (holding that "the EEOC's investigative authority is tied to charges filed with the Commission" and, therefore, "the EEOC is entitled to access only to evidence relevant to the charge under investigation (internal citations omitted)).

[17] *See* Press Release, EEOC, EEOC Acting Chair Andrea Lucas Sends Letters to 20 Law Firms Requesting Information About DEI-Related Employment Practices (Mar. 17, 2025), *available at* https://www.eeoc.gov/newsroom/eeoc-acting-chair-andrea-lucas-sends-letters-20-law-firms-requesting-information-about-dei.

[18] *See* 29 C.F.R. § 1601.9 ("A charge shall be in writing and signed and shall be verified.").

been categorically prohibited from issuing a press release[19] about its settlements with those firms. The government admitted in an April 23, 2025, hearing that "no . . . charge meeting statutory prerequisites has been filed against" Perkins Coie LLP.[20] Another judicial opinion strongly suggested that, as of May 23, 2025, no charges had been filed against Jenner & Block LLP.[21]

Given these examples, and the lack of countervailing evidence of charges, it is safe to assume that few, if any, of the twenty firms that received the March letter were charged. Accordingly, the EEOC had no power under Title VII to conduct an investigation. To the extent the EEOC sent letters, investigated firms, and negotiated settlements pursuant to some other authority, such as an executive order, the confidentiality provisions of Title VII, the ADA, and GINA do not bar production.[22] Because the EEOC has not identified a withholding statute that actually applies to the records at issue, Exemption (b)(3) is totally inapplicable.

**B. Exemption (b)(7)(C) applies, at most, to personally identifiable information, which must be segregated and redacted from the records.**

The EEOC also asserts that it is withholding the settlement agreements themselves under FOIA Exemption (b)(7)(C). Any withholding under Exemption (b)(7) "requires a two-part inquiry. First, a requested document must be shown to have been an investigatory record 'compiled for law enforcement purposes.' If so, the agency must demonstrate that release of the material would have one of the six results specified in the Act."[23] In the case of Exemption (b)(7)(C), the result must be "an unwarranted invasion of personal privacy."[24] Here, the EEOC's argument fails both prongs of the test.

As an initial matter, there is no evidence that the requested records were compiled for law enforcement purposes. The EEOC correctly notes that (b)(7) "applies to civil and criminal investigations conducted by regulatory agencies."[25] However, in the context of civil enforcement, an agency raising Exemption (b)(7) "must demonstrate that it had a purpose falling within its sphere of enforcement authority in compiling the particular document."[26] Moreover, that purpose

---

[19] Press Release, EEOC, In EEOC Settlement, Four 'BigLaw' Firms Disavow DEI and Affirm Their Commitment to Merit-Based Employment Practices (Apr. 11, 2025), *available at* https://www.eeoc.gov/newsroom/eeoc-settlement-four-biglaw-firms-disavow-dei-and-affirm-their-commitment-merit-based.

[20] *See Perkins Coie LLP v. U.S. Dep't of Just.*, No. 25-CV-00716-BAH, 2025 WL 1276857, at *24 (D.D.C. May 2, 2025).

[21] *See Jenner & Block LLP v. U.S. Dep't of Just.*, No. 25-CV-00916-JDB, 2025 WL 1482021, at *19 (D.D.C. May 23, 2025) ("If Jenner discriminates, the EEOC will doubtless receive a charge to that effect, *at which point* it will be free, indeed obligated, to investigate." (emphasis added)).

[22] *See Westinghouse Elec. Corp. v. Schlesinger*, 542 F.2d 1190, 1199 (4th Cir. 1976) (explaining that information provided to EEOC pursuant to executive order was not subject to § 709(e)); *Hughes Aircraft Co. v. Schlesinger*, 384 F. Supp. 292, 295 (C.D. Cal. 1974) (same).

[23] *F.B.I. v. Abramson*, 456 U.S. 615, 622 (1982).

[24] 5 U.S.C. § 552(b)(7)(C).

[25] Attachment B at 3 (citing *Abraham & Rose, P.L.C. v. United States*, 138 F.3d 1075, 1083 (6th Cir. 1998)).

[26] *Church of Scientology of California v. U.S. Dep't of Army*, 611 F.2d 738, 748 (9th Cir. 1979), *overruled on other grounds by Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987 (9th Cir. 2016).

must be "based upon properly delegated enforcement authority."[27] Conversely, where an agency has "no authority in the guise of law enforcement" to conduct an investigation, Exemption (b)(7) cannot be used to withhold records.[28]

The EEOC has not carried its heavy burden of showing a proper law enforcement purpose here.[29] As explained above, the requested records do not appear to relate to any investigation conducted under the authority of Title VII, the ADA, or GINA. Indeed, multiple courts have held that the EEOC had *no* authority, statutory or otherwise, to send the March 17 letters.[30] The EEOC has not shown, and cannot show, that the requested records were compiled for a valid law enforcement purpose subject to properly delegated authority.

Even assuming that the EEOC was acting in a law enforcement capacity when it created or obtained the requested emails, agreements, and documents, Exemption (b)(7)(C) would not justify withholding those records in full. Exemption (b)(7)(C) is narrow in scope. The exemption applies only to natural persons; it does not extend to corporations like the law firms identified in the records.[31] Moreover, it only applies to "unwarranted" invasions of personal privacy.[32] To withhold records under this Exemption (b)(7)(C), an agency must show that it appropriately "balance[d] the competing interests in privacy and disclosure."[33] If the agency finds that releasing certain details would constitute an unwarranted invasion of a natural person's, the agency must segregate out and redact the exempt—and *only* the exempt—material.[34]

The only potential invasion of personal privacy that the EEOC raised involves "statements and identities of witnesses and subjects of [its] investigation."[35] This is not, in itself, a justification with withholding information. The EEOC is obligated to balance each individual's privacy interest

---

[27] *Id.*

[28] *Weissman v. Cent. Intel. Agency*, 565 F.2d 692, 696 (D.C. Cir. 1977) (holding that CIA could not withhold records related to background check, where no statute authorized such a check).

[29] *See Pratt v. Webster*, 673 F.2d 408, 418 (D.C. Cir. 1982) (noting that, for mixed-purpose agencies, "a court must scrutinize with some skepticism the particular purpose claimed for disputed documents redacted under FOIA Exemption 7").

[30] *See Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of President*, No. 25-CV00-917-RJL, 2025 WL 1502329, at *31 (D.D.C. May 27, 2025) (holding unconstitutional executive order on which EEOC letters were based); *Jenner & Block LLP v. U.S. Dep't of Just.*, No. 25-CV-00916-JDB, 2025 WL 1482021, at *19 (D.D.C. May 23, 2025) (holding that executive order did not provide a lawful basis for investigation); *Perkins Coie LLP v. U.S. Dep't of Just.*, No. 25-CV-00716-BAH, 2025 WL 1276857, at *24 (D.D.C. May 2, 2025) ("[N]o authority is identified by the government—and the Court is aware of none—empowering the President to direct the EEOC to target specific businesses or individuals for an investigation.").

[31] *See FCC v. AT & T Inc.*, 562 U.S. 397, 410 (2011).

[32] *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 172 (2004).

[33] *Id.*

[34] *See Krikorian v. Dep't of State*, 984 F.2d 461, 466 (D.C. Cir. 1993) (explaining that segregability requirement applies to all FOIA exemptions).

[35] Attachment B at 3.

with the public interest in disclosure. Where, as here, the records may shed light on the integrity and appropriateness of a government action, the public interest in disclosure is at its peak.[36]

Requesters expect that some identifying details, such as the names and titles of the individuals who signed off on agreements, will easily satisfy the public interest test. Others, like the identities of lower-level witnesses and whistleblowers, may not. However, even a legitimately unwarranted invasion of personal privacy would not justify withholding the requested documents in full. Rather, the appropriate response would be to redact the exempt information.[37]

**Requested Relief**

In light of the foregoing, we respectfully request that your office reverse the denial of FOIA Case Number 820-2025-011745 and remand with instructions to provide the requested records in full. If you have any questions about this appeal, please do not hesitate to contact Requesters at hampson@law.ufl.edu, maizelel@law.msu.edu, and mkortz@law.harvard.edu.

Yours,

/s/ Christopher D. Hampson

Christopher D. Hampson
University of Florida Levin College of Law

/s/ Elise Bernlohr Maizel

Elise Bernlohr Maizel
Michigan State University College of Law

/s/ Mason A. Kortz

Mason A. Kortz
Harvard Law School

---

[36] *Elec. Priv. Info. Ctr. v. United States Dep't of Just.*, 18 F.4th 712, 720 (D.C. Cir. 2021) (ordering release of "material [that] covers how the Special Counsel carried out his duties to investigate and prosecute criminal conduct"); *Citizens for Resp. & Ethics in Washington v. United States Dep't of Just.*, 854 F.3d 675, 682-83 (D.C. Cir. 2017) (noting strong public interest "in learning whether DOJ pulled its punches" during investigation).
[37] *Church of Scientology Int'l v. U.S. Dep't of Just.*, 30 F.3d 224, 232 (1st Cir. 1994) (holding that agency did not meet its burden where an "entire document [was] withheld pursuant to Exemption 7(C) yet nothing in the [agency filing] indicates why the privacy interest at stake could not be protected simply by redacting identifying information.").

# **Attachment A**

## May 13, 2025, Request

# Attachment B

June 13, 2025, Initial Response

# Attachment C

July 21, 2025, Final Response